UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
VERONIKA DIAZ,

                   Plaintiff,

      -against-

GIRO WASP LLC d/b/a VESPA QUEENS, and
PIAGGIO GROUP AMERICAS, INC.,

                  Defendants.
---------------------------------------------------------X

Civil Case No: 1:16-cv-4820

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

      Plaintiff, VERONIKA DIAZ (hereinafter referred to as "Plaintiff' and/or "DIAZ"),

by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC, hereby

complains of Defendant GIRO WASP LLC doing business as ("d/b/a") VESPA QUEENS

(hereinafter referred to as "VESPA"), and Defendant PIAGGIO GROUP AMERICAS,

INC. (hereinafter referred to as "PIAGGIO") (hereinafter collectively referred to as

"Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff VERONIKA DIAZ complains pursuant to Title VII of the Civil Rights Act of

    1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by

    the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with

    Disabilities Act of 1990 ("ADA"), as amended, The Fair Labor Standards Act of 1938

    ("FLSA"), as amended, the Administrative Code of the City of New York and the

    laws of the State of New York, based upon the supplemental jurisdiction of this Court

    pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28

    U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the

    injuries Plaintiff has suffered as a result of, *inter alia*, disability discrimination,

sex/gender discrimination, sexual harassment, hostile work environment, retaliation, and wrongful termination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, the ADA, and the FLSA. The Court also has jurisdiction pursuant to 42 U.S.C. §12101, *et seq.*, 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about January 29, 2016, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about June 1, 2016, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions that give rise to the claims asserted herein occurred within the Eastern District of New York.

## PARTIES

8. Plaintiff is an individual woman who is a resident of the State of New York, County of Queens.

9. Defendant GIRO WASP LLC d/b/a VESPA QUEENS is a domestic limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. Defendant PIAGGIO GROUP AMERICAS, INC. is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New York.

11. At all times material, Defendants were joint employers of Plaintiff.

## STATEMENT OF FACTS

12. Defendants own and operate a "Vespa scooter" (hereinafter referred to as "scooter" and/or "bike") dealership located at 37-43 Crescent Street, Long Island City, New York 11101 (hereinafter referred to as "The Dealership").

13. At all times material, DAMIAN SANDONE (hereinafter referred to as "SANDONE") was and is the owner and operator of Defendant VESPA.

14. At all times material, SANDONE had supervisory authority over Plaintiff with regard to her employment.

15. At all times material, MICHEL ROGER (hereinafter referred to as "ROGER") was and is the owner and operator of Defendant VESPA.

16. At all times material, ROGER had supervisory authority over Plaintiff with regard to her employment.

17. In or around August 2014, Defendants hired Plaintiff as a Sales Associate.

18. Plaintiff received a base salary of $14 per hour, plus additional commissions based on her sales performance.

19. Immediately after hiring Plaintiff, Defendants demanded that Plaintiff work six (6) days a week, over forty (40) hours per week without overtime pay.

20. On numerous occasions, Defendants threatened Plaintiff that they would hire someone to replace Plaintiff or hire an assistant to take half of Plaintiff's commissions if she did not comply with their demands. This occurred continuously until April

2015.

21. In or around August 2014, Plaintiff worked six (6) days a week and was not paid overtime. Furthermore, Plaintiff was not paid for the days that she was in training.

22. Shortly after Plaintiff was hired, Defendants promoted Plaintiff to Sales Manager.

23. At the time that Plaintiff was hired, Plaintiff informed Defendants that she suffered, and continues to suffer, from Post-Traumatic Stress Disorder ("PTSD"). Plaintiff was previously in an abusive relationship where she was the victim of domestic violence. Plaintiff received treatment in a trauma therapy clinic for roughly three years, from 2009 until 2012.

24. In or around August 2014, Plaintiff discussed her condition with SANDONE and requested that he refrain from certain behavior that would trigger Plaintiff's condition, such as screaming, yelling, acting aggressively, etc.

25. The disturbance, regardless of its trigger, causes clinically significant distress or impairment in Plaintiff's social interactions, capacity to work and other important areas of functioning.

26. Plaintiff made a verbal request for a reasonable accommodation in order to perform the essential functions of her job.

27. In addition, Plaintiff asked if Defendants needed documentation of her medical condition; however, Defendants told Plaintiff that they did not need to see any documentation. Defendants granted Plaintiff's request for a reasonable accommodation on the basis of her disability.

28. In or around September 2014, Plaintiff was assisting a customer with the sale of a used bike which was located on the sidewalk outside of The Dealership. Defendants' head mechanic, JUAN MEJIA (hereinafter referred to as "JUAN"), walked over to the

bike that Plaintiff and the customer were standing next to. JUAN proceeded to lie down on the sidewalk, his back to the ground, and pretended to examine some of the pipes on the underbelly of the bike. JUAN looked up at Plaintiff and smiled saying, "Hey Veronika. You beautiful, girl."

29. Plaintiff found JUAN's comment to be unprofessional and made Plaintiff feel extremely uncomfortable.

30. About an hour later, JUAN approached Plaintiff at her desk and as he placed both hands onto the desk, JUAN leaned in towards Plaintiff and said, "Hey Veronika, I like those panties. I like the yellow panties with the little flowers."

31. Plaintiff was stunned and humiliated. Plaintiff responded, "Excuse me! How did you know what color my underwear is?" JUAN responded, "Oh, I pretend to check the bike, but I look up your dress," and winked at Plaintiff as he walked away.

32. Plaintiff was mortified and immediately ran to SANDONE, the owner of Defendant VESPA. Plaintiff informed SANDONE of what had just transpired with JUAN.

33. Once again, Plaintiff reminded Defendants of her medical condition and that this behavior was triggering her PTSD.

34. SANDONE assured Plaintiff that he would speak to JUAN.

35. However, JUAN was not disciplined and continued to sexually harass Plaintiff over the course of the next year.

36. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

37. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

38. Plaintiff attempted to keep her distance from JUAN; however, they occasionally

needed to communicate for work purposes.

39. At every opportunity, JUAN continued to sexually harass Plaintiff.

40. In fact, JUAN repeatedly attempted to touch and grope Plaintiff, as well as make numerous inappropriate and sexually charged comments towards Plaintiff.

41. JUAN frequently told Plaintiff, "Veronika, if I had you alone...I tell you, if you come to my house I would make you feel so good," as well as, "Girl, you beautiful. I wanna fuck you so bad."

42. On numerous occasions, JUAN commented on what Plaintiff was wearing, told Plaintiff to come give him a big hug, and asked Plaintiff if she would get drinks with him.

43. Plaintiff always declined JUAN's advances.

44. Plaintiff repeatedly complained to Defendants of JUAN's unrelenting sexual advances and harassment. However, Defendants failed to take any action to remedy the situation.

45. Furthermore, on numerous occasions, JUAN waited in his car for Plaintiff to get out of work. Plaintiff tried to walk past his car or in the opposite direction, however, JUAN would call Plaintiff's cell phone and even follow her in his car.

46. JUAN's repeated and unwelcome stalking made Plaintiff uncomfortable and fearful of her safety. On a handful of occasions, JUAN scared Plaintiff so much that Plaintiff felt compelled to get in his car so he would stop following her. JUAN would insist over and over again.

47. While in the car with JUAN, JUAN attempted to kiss Plaintiff. Plaintiff refused and told JUAN to leave her alone.

48. Defendants were aware of the fact that Plaintiff was being sexually harassed on a

daily basis and did not take any steps to remedy the situation.

49. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

50. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

51. In or around October 2014, Defendants hired MELINDA (last name unknown) (hereinafter referred to as "MELINDA"), as a Service Manager. SANDONE told Plaintiff that he hoped they would get along since Plaintiff and MELINDA had both experienced abusive relationships in their past. In fact, SANDONE stated to Plaintiff, "You should have no problem being a submissive employee since you've dealt with abuse before."

52. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

53. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

54. Defendants were aware of this continuous pattern and practice of sexual harassment but chose to do nothing.

55. In or around February 2015, Defendants were investigated and fined for fraudulently designating employees as independent contractors and failing to pay employment taxes. Furthermore, Defendants were fined for failure to pay unemployment benefits.

56. At the same time, SANDONE told Plaintiff that he was trying to find a way to, "get rid of the girls," and fire Plaintiff on a technicality that would allow him to not pay her unemployment benefits. SANDONE frequently said that the dealership was "a boys club."

57. Defendants discriminated against Plaintiff on the basis of her sex/gender.

58. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

59. In or around March 2015, SANDONE began to escalate the frequency and manner in which he reprimanded Plaintiff. SANDONE yelled at Plaintiff stating that she was "too timid," and deserved to be yelled at because "you let yourself take it."

60. Plaintiff repeatedly asked SANDONE to refrain from screaming and yelling at her in order to accommodate her disability. However, Defendants knowingly and wantonly failed to provide Plaintiff with a reasonable accommodation.

61. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

62. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

63. At the same time, SANDONE began to order Plaintiff not to produce invoices on certain cash transactions. SANDONE did this to avoid paying taxes and avoid having to share the money with his partner, ROGER.

64. Plaintiff began to feel like SANDONE's punching bag and her PTSD was severely exacerbated. Plaintiff began to have severe anxiety and difficulty sleeping due to nightmares about work. As a result, Plaintiff's anxiety manifested itself in the form of frequent and severe panic attacks.

65. Plaintiff was afraid to see SANDONE at work, fearing that he would yell at her and scold her for no reason.

66. On or about March 30, 2015, Plaintiff informed the silent partner and owner of Defendant GIRO WASP, ROGER, that SANDONE's behavior was extremely hostile.

Furthermore, Plaintiff explained to ROGER that she was previously in an abusive relationship where she was the victim of domestic violence.

67. Plaintiff explained to ROGER that SANDONE's aggressive behavior was exacerbating her PTSD - despite the fact that she made SANDONE aware of her condition and requested that he not behave in a manner that would cause her trauma and anxiety.

68. Once again, Plaintiff made Defendants aware of the fact that she was previously the victim of domestic violence and suffers from PTSD.

69. Shortly after making her complaint to ROGER, Defendants reduced Plaintiff's commission payments.

70. Defendants retaliated against Plaintiff and subjected Plaintiff to an adverse employment action on the basis of her complaints of discrimination against SANDONE.

71. In or around April 2015, SANDONE failed to compensate Plaintiff with the proper amount of commission that Plaintiff was owed. Plaintiff brought it to SANDONE's attention but Plaintiff was never paid the commissions owed to her.

72. Defendants retaliated against Plaintiff for her complaint of disability discrimination against SANDONE.

73. On or about April 22, 2015, a male customer screamed at Plaintiff. In response, SANDONE stated, "We clearly need a male to intervene here."

74. Defendants discriminated against Plaintiff on the basis of her sex/gender.

75. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

76. In or around May 2015, Plaintiff was dealing with a male customer, GEORGE

YAGHMOUR (hereinafter referred to as "YAGHMOUR"), who was growing impatient with Plaintiff. At the conclusion of the transaction, SANDONE screamed at Plaintiff, "What? You couldn't handle that customer? We're definitely hiring a man next time. I feel like we need a man around here in charge."

77. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

78. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

79. Immediately thereafter, once again, Plaintiff told ROGER that SANDONE had discriminated against her on the basis of her disability and sex/gender.

80. In fact, Defendants hired YAGHMOUR, a man, as the Sales Manager of the dealership and made him Plaintiff's superior. Plaintiff was not allowed to make a sale without Defendants' employee YAGHMOUR's approval.

81. Immediately thereafter, Defendants demoted Plaintiff from a Sales Manager to a Sales Associate.

82. Moreover, Defendants gave YAGHMOUR half of Plaintiff's commissions.

83. Defendants discriminated against Plaintiff on the basis of her gender.

84. Defendants retaliated against Plaintiff for her complaints of discrimination against SANDONE.

85. In or around June 2015, Defendants terminated MELINDA and replaced her with a man.

86. On or about August 22, 2015, SANDONE instructed Defendants' employees to break down cardboard boxes. Plaintiff started to help when SANDONE told her, "Although you look very sexy cutting boxes, you don't have to help - the boys will take care of

it."

87. Defendants continued to discriminate against Plaintiff on the basis of her gender.

88. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

89. Later that evening, on or about August 22, 2015, JUAN gave Plaintiff a ride home from work. After driving for several minutes, JUAN decided to pull the car over to the side of the road. While stopped, JUAN told Plaintiff, "You so beautiful. Don't tell the boss though," and lifted up Plaintiff's skirt. Plaintiff slapped JUAN's hand away and told him "STOP!" JUAN said "Oh my god. You are wearing the same panties again. This is so romantic." JUAN then forcibly grabbed Plaintiff's head with both hands and attempted to force Plaintiff to kiss him. Plaintiff slapped JUAN away from her and ran out of the car.

90. Defendants discriminated against Plaintiff on the basis of her disability and her sex/gender.

91. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

92. Plaintiff next scheduled day to work was on or about August 25, 2015. Upon arriving at The Dealership, Plaintiff immediately informed Defendants of JUAN's most recent sexual assault and harassment.

93. As a result, Defendants then suspended Plaintiff for an entire week. However, upon information and belief, JUAN was neither suspended nor reprimanded.

94. Defendants claimed that Plaintiff was suspended for a typographical error ("typo") on some paperwork.

95. Defendants suspended Plaintiff for a "typo," but did not discipline JUAN, who

continued to sexually assault and harass Plaintiff.

96. Defendants retaliated against Plaintiff and subjected Plaintiff to an adverse employment action for her complaints of sexual harassment against JUAN.

97. In fact, on or about September 11, 2015, SANDONE sent an email to YAGHMOUR discussing the incident with JUAN and stated that, "I feel her attire is sometimes very provocative and I simply don't want [sic] see it anymore."

98. Plaintiff happened to see this email and was stunned by SANDONE's comment. Plaintiff felt that it was egregious and reprehensible behavior for her supervisors, while discussing Plaintiff's allegation of sexual assault, to bring up the way Plaintiff dresses as a means of excusing the assault. That behavior is appalling and an insult to all victims of sexual assault.

99. Defendants discriminated against Plaintiff on the basis of her sex/gender.

100. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

101. Furthermore, Defendants continued to retaliate against Plaintiff and withhold Plaintiff's commission payments.

102. Moreover, despite all that has transpired between Plaintiff and JUAN up to this point, on or about September 18, 2015, Defendants allowed Plaintiff and JUAN to be left alone together after hours. Plaintiff was petrified and did not understand how Defendants could allow them to be left alone together after her repeated complaints of sexual harassment against him.

103. Defendants subjected Plaintiff to a hostile work environment on the basis of her disability and her sex/gender.

104. Shortly thereafter, in or around September 2015, Plaintiff informed Defendants

that she was left alone with JUAN and was not comfortable working with JUAN.

105.    In or around October 2015, Defendants cut Plaintiff's hours and shifts.

106.    Defendants continued to retaliate against Plaintiff and subject Plaintiff to an adverse employment action for her complaints of discrimination, sexual harassment, and a hostile work environment.

107.    In or around November 2015, Defendants disciplined Plaintiff for another "typo" on a document that was sent to the Department of Motor Vehicles ("DMV"). At the same time, YAGHMOUR also received a notice from the DMV regarding paperwork he had filled out that contained seven (7) typos. However, YAGHMOUR was not disciplined.

108.    Defendants discriminated against Plaintiff on the basis of her gender.

109.    On or about November 12, 2015, Defendants terminated Plaintiff.

110.    Defendants terminated Plaintiff because she is a woman, because of Plaintiff's disability and because Plaintiff asked for a reasonable accommodation regarding her disability.

111.    Defendants retaliated against Plaintiff and subjected Plaintiff to an adverse employment action because of her complaints of discrimination on the basis of her sex/gender and disability, because of her complaints of sexual harassment, and because of her complaints of a hostile work environment on the basis of her sex/gender and disability.

112.    As a result of Defendants' actions, Plaintiff felt extremely degraded, victimized, and emotionally distressed.

113.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continue to suffer severe emotional distress and physical ailments.

114. As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

115. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

116. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

119. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to sex/gender discrimination, sexual harassment, and causing a hostile work environment.

120.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

121.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

122. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

123. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

124. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

125. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

126.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

127.    Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

128.    SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

129.    Defendants violated the section cited herein by failing to accommodate Plaintiff's request for reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability.

130.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the ADA.

131.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

132.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

133.    SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this chapter.

134.    Defendants engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

135.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW**

136.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

137.    New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

138.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender and disability, together with harassment and causing a hostile work environment.

139.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New York State Executive Law Section 296.

140.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW

141.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

142.   New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

143.   Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendant.

144.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW

145.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

146.   New York State Executive Law §296(6) further provides that, "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

147.   Defendants engaged in an unlawful discriminatory practice by aiding, abetting,

compelling and/or coercing the discriminatory, unlawful and retaliatory conduct as stated herein.

148. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

149. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

150. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

151. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's sex/gender and disability.

152. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

153. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

154.    Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this complaint.

155.    The New York City Administrative Code Title 8, §8-107(1)(e) provides that it
shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or
otherwise discriminate against any person because such person has opposed any
practices forbidden under this chapter. . . "

156.    Defendants engaged in an unlawful discriminatory practice in violation of New
York City Administrative Code Title 8, §8-107(1) (e) by discriminating and retaliating
against the Plaintiff because of Plaintiff's opposition to the unlawful employment
practices of her employer.

157.    Defendants violated the above and Plaintiff suffered numerous damages as a
result.

### AS A TENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

158.    Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this complaint.

159.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall
be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or
coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

160.    Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

161.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

162.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

163.    Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

164.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TWELFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

165.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

166.    Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and

two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

167.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRTEENTH CAUSE OF ACTION
UNDER THE FAIR LABOR STANDARDS ACT
OVERTIME**

168.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

169.    Defendants willfully employed Plaintiff in the aforementioned enterprise for work weeks longer than 40 hours and failed to compensate Plaintiff for her employment in excess of 40 hours per week, at a rate of at least one and one-half times the rate at which she was employed.

170.    Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 *et seq.*, and its implementing regulations.

171.    Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA,

was a direct violation of the FLSA, specifically 29 U.S.C. §207.

172.    Defendants' failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

173.    Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

174.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK WAGE AND HOUR LAW**
**and VIOLATION OF Title 12 NYCRR Section 142-2.2**
**OVERTIME RATE**

175. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

176.    Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor Section 142 *et seq*.

177.    Defendants failed to pay Plaintiff a premium for hours worked in excess of 40 hours per week.

178.    Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

179.    Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of 10 hours per day.

180. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

181.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTEENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK WAGE ORDER
## EMPLOYEE RECORDS

182. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

183. Defendants failed to keep employee-specific records documenting, *inter alia,* actual hours worked in each week, in violation of New York Labor Law § 661 and 12 NYCRR 142-2.6.

184. Defendants failed to furnish statements with pay and hour information to Plaintiff, in violation of 12 NYCRR 142-2.7.

185.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Very truly yours,

DEREK SMITH LAW GROUP, PLLC

Dated:   August 29, 2016
         New York, New York

By: _____
     Zack Holzberg, Esq.
     30 Broad Street, 35th floor
     New York, New York 10004
     (212) 587-0760